**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARY MOLINA, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| | <u>JURY TRIAL DEMANDED</u> |
| GOOD EARTH LIGHTING, INC., | |
| Defendant. | |

## NATURE OF THE ACTION

1.      This case concerns a life-threatening product and its manufacturer's inadequate recall efforts.

2.      On June 6, 2024, Defendant, Good Earth Lighting, Inc. ("Good Earth" or "Defendant"), and the U.S. Consumer Product Safety Commission ("CPSC") announced the recall of over 1.2 million defective rechargeable lights.[1] Consumers were warned to "immediately stop using the recalled lights" because the lights' batteries were prone to overheating and igniting, posing fire and burn hazards. At the time of the recall, the CPSC was aware of at least one consumer fatality and another consumer who had been treated for smoke inhalation after Defendant's lights caused fires in their homes in 2023. At the time of the recall, Defendant was already aware of at least nine additional reports of lights overheating, including six that resulted in fires and property damage. Additional fires reportedly involving Defendant's rechargeable lights were and continue to be investigated.

3.      Because the rechargeable lights are intended for use as alternatives to permanently wired fixtures, consumers frequently place them in enclosed spaces such as closets, cupboards, staircases, and other locations with barriers to wiring installation. This makes Defendant's lights especially dangerous and, therefore, useless to consumers seeking a safe alternative to wired lighting.

4.      There is no dispute that the subject rechargeable lights are defective and that customers who bought them did not get what they paid for. Today, tucked away on a remote portion of Good Earth's website that few people are likely to see, is a warning that, "the unit's batteries can catch on fire, which may lead to injury or death, posing a burn or smoke inhalation hazard to consumers."[2] Defendant urges consumers to "please immediately unplug and stop

---

[1] https://www.cpsc.gov/Recalls/2024/Good-Earth-Lighting-Recalls-More-than-1-2-Million-Rechargeable-Integrated-Lights-to-Due-to-Fire-and-Burn-Hazards-One-Death-Reported

[2] https://goodearthlighting.com/productrecall

using your unit." Thus, Good Earth admits the rechargeable lights are unsuitable for their intended purpose and pose an unreasonable safety hazard.

5. And yet Good Earth refuses to give customers their money back for these defective products. Instead, Good Earth implemented a deficient recall that allows it to *say* they are doing the right thing, when in fact the primary objective is to protect their bottom line.

6. Any requests for refunds are denied. A consumer has only one option: receive a replacement rechargeable light made by Good Earth, regardless of whether they continue to want one or to trust the manufacturer. What's more, a replacement is available to only those consumers who still have the defective light at home; consumers who already discarded the light because they experienced overheating or property damage as a result of the defect are left without recourse.

7. By design, the recall received very little publication, with the result that the response rate has been low. An offer to replace rechargeable lights does little good when Good Earth did the bare minimum possible to let people know about the offer. This approach benefits Good Earth by minimizing the cost and burden of the recall.

8. Plaintiff Mary Molina files this class action lawsuit to seek all available relief to consumers, to raise awareness that Good Earth's rechargeable lights are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## **PARTIES**

9. Plaintiff Mary Molina is domiciled in Pine Grove, California. Ms. Molina purchased Defendant's now recalled rechargeable lights from Lowe's in 2022 for use in her residence in California. Ms. Molina suffered harm from purchasing and using the lights due to the defect alleged herein. Specifically, one of the lights which was installed in a hutch in her home overheated and was hot to the touch. The light ultimately caused property damage to items

in proximity to the light by singing those items. Ms. Molina disposed of the light upon discovering the property damage, and disposed of the remaining lights because they posed a fire hazard.

10.     Before purchasing the rechargeable lights, Ms. Molina reviewed the floor model of the product on the sales floor of Lowe's, and the box that the product came in. Neither source disclosed the existence of the defect. The fact that the rechargeable lights are defective is material to Ms. Molina. If Good Earth's product packaging, website, or store personnel had disclosed the defect, then Ms. Molina would not have purchased the rechargeable lights, or she would have purchased them on different terms. Further, Ms. Molina experienced the defect at issue in this action—namely, her rechargeable light overheated and caused property damage.

11.     Defendant, Good Earth Lighting, Inc., is an Illinois corporation with its principal place of business and headquarters at 1400 E Business Center Drive, Suite 108, Mount Prospect, Illinois 60056. Good Earth designed, developed, manufactured, distributed, sold, warranted, and monitored the performance of all of the rechargeable lights at issue here. Good Earth operates a web site where it provides information regarding the rechargeable lights at issue and where they can be purchased, which can be found at www.goodearthlighting.com. Through retailers including Lowe's, Amazon, Menards, Green Electrical Supply, HD Supply, Ace Hardware, Do It Best, Meijer, Camping World, Wayfair, Costco, Rona, and QVC – both online and at brick-and-mortar locations – Good Earth was responsible for advertising, warranties, dissemination of owner's manuals and other consumer-facing documents, customer service, and monitoring performance of the products in the United States and Canada.

12.     At all relevant times, these retailers acted as agents of Good Earth, working in conjunction to sell the products to their customers. All product packaging and consumer disclosures (as well as omissions contained in those disclosures) were approved by Good Earth.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed

class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from Defendant.

14.     This Court has general jurisdiction over Defendant because it is headquartered in Illinois, and has a principle place of business in Illinois. Further, the Court has general jurisdiction over Defendant because Defendant conducts substantial business within Illinois such that Defendant has significant, continuous, and pervasive contacts with the State of Illinois.

15.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and because Defendant is headquartered in this District.

## FACTUAL ALLEGATIONS

16.     **Product at issue:**  the rechargeable lights at issue in this case have model numbers starting with RE1122, RE1145, RE1362 and RE1250 and include the following models: RE1122-WHG-12LF0-G; RE1122-WHG-12LF2-G as part of RE1145-WHG-12LF2-Q bundle; RE1122-WHG-12LF0-F; RE1122-SIL-12LF0-G; RE1122-SIL-12LF2-G as part of RE1145-SIL-12LF2-Q bundle; RE1122-ALM-12LF2-G as part of RE1145-ALM-12LF2-Q bundle; RE1362-RGB-12LF2-G; RE1250-WHG-12LFR-G; RE1250-WHG-12LF1-G as part of RE1250-WHG-12LF2-Q bundle; RE1250-SIL-12LF1-G as part of RE1250-SIL-12LF2-Q bundle; RE1250-BKG-12LF1-G as part of RE1250-BKG-12LF2-Q bundle; RE1250-RGP-12LF1-G as part of RE1250-RGP-12LF2-Q bundle; and RE1250-ALM-12LF1-G as part of RE1250-ALM-12LF2-Q bundle.

17.     The lights were sold for approximately $20 for a single unit and approximately $35 for a bundle of two units.

18.     The lights were sold in a variety of colors, including white, silver, almond, black, and rose gold, and came with a charging cable. Some lights were sold with a remote control and/or power adapter, and others were sold without a remote control and/or power adapter.

19.     **Defect at issue:**  As stated by Defendant, "the unit's batteries can catch on fire, which may lead to injury or death, posing a burn or smoke inhalation hazard to consumers."

20.     The CPSC similarly describes the defect as follows: "Hazard: The recalled light's battery can overheat and ignite the light's plastic housing, posing fire and burn hazards to consumers."

21.     The defect affects all of the products at issue. Defendant has instructed consumers to "please immediately unplug and stop using your unit," regardless of whether their particular product appears to be ok.

22.     The cause of the defect is the same for all of the products at issue.

23.     **Relevant time period:**  All of the omissions at issue here were uniformly and consistently made at all times during the last four years, at least.  There have been no material changes to the product packaging or other consumer facing materials during the relevant period.

24.     **The omissions and misrepresentations:**  Defendant described the products as rechargeable LED lights "for accent and under cabinet lighting" and "great for under cabinets, closets, garages, and pantries."[3] Defendant also claimed the products "eliminate the need for light bulbs," require "no wires, no tools, no mess," and are "easy to install and fits nearly anywhere." Defendant claimed the lights can "operate as a plug-in fixture using the USB cord" or the lights' "Lithium battery can be charged up to 500 times." However, Defendant failed to disclose that due to a defect in the materials, workmanship, and/or design, the rechargeable light was prone to overheating and igniting its plastic housing, and that none of the above representations were true due to the defect.

25.     The omissions and misrepresentations pertain to an unreasonable safety hazard that reasonable consumers consider to be material.

26.     Ms. Molina and class members would not have bought the rechargeable lights, or would not have bought them on the same terms, if the defect had been disclosed. The materiality of the defect also is demonstrated by the existence of the recall.

---

[3] https://www.lowes.com/pd/Good-Earth-Lighting-Rechargeable-USB-LED-Lighting-12-in-Battery-Light-Bar/1001776458; *see also* https://www.doitbest.com/product/502598/good-earth-lighting-white-led-rechargeable-battery-operated-strip-light-502598/?store=5960&gad_source=1&gclid=Cj0KCQjwyL24BhCtARIsALo0fSCeO2nI8mlK7RIUcOf9rkAE47SYNbOEq2z7mhw5ZznWjqGjYnUuPyIaAor3EALw_wcB;

27. Defendant did not disclose the defect on the product packaging, the product pages of its website, the owner's manual, the product pages of other retailers who acted as Defendant's agents, or in any other customer-facing document. To the extent the products were sold at brick-and-mortar locations, such as Lowe's, sales personnel and customer service representatives did not disclose the defect.

28. At the time of purchase, Ms. Molina and class members did not know and did not have reason to know that the rechargeable lights were defective. Defendant had exclusive knowledge of that fact.

29. Defendant made partial representations to Ms. Molina and class members, while suppressing the safety defect. Specifically, by displaying the rechargeable lights and describing the lights' functions and features (*e.g.*, "for accent and under cabinet lighting," "great for under cabinets, closets, garages, and pantries," "eliminate the need for light bulbs," "no wires, no tools, no mess," "easy to install and fits nearly anywhere," can "operate as a plug-in fixture using the USB cord," and the "Lithium battery can be charged up to 500 times"), the product packaging and product webpages implied and represented that they were suitable as rechargeable lights for use in enclosed spaces, without disclosing that they had a critical safety-related defect related to the light.

30. **Defendant's Pre-sale Knowledge of the Defect:**

31. Defendant was aware of the defect at the time of sale.

32. Before the products were first launched, Defendant knew about the defect because of pre-release testing.

33. After launch, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, and field reports. Defendant knows that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

34.     The customer complaints about the rechargeable lights also would have put Defendant on notice of the defect and contributed to its pre-sale knowledge of the defect, because the defect is the same or substantially similar in all material respects. The number of complaints about the defect was unusually high relative to the total number of products sold. The fact that so many owners made similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the rechargeable lights. The reports and complaints from owners were similar enough to put Defendant on notice that the incidents described were the result of a defect, and that the rechargeable lights were experiencing unusually high levels of complaints.

35.     Defendant also monitored and would have known about consumer complaints to the CPSC. When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendant adheres to that practice.

36.     **Presuit notice**: On August 6, 2024, Plaintiff provided pre-suit notice via certified mail in a letter that complied with all applicable notice requirements. Defendant's counsel received that notice, and subsequently responded confirming receipt.

37.     **No Adequate Remedy At Law:**

38.     Plaintiff and members of the putative classes are entitled to equitable relief because no adequate remedy at law exists.

39.     Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

40.     Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

41.     Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks non-restitutionary disgorgement of profits in connection with her unjust enrichment claim.

42.     Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

43.     In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

44.     **The Recall Does Not Render This Lawsuit Moot**:

45.     The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

46.     Under the recall, Defendant will only provide a replacement rechargeable light made by Good Earth. No cash refunds are provided, partial or otherwise. Replacement is also not viable for people like Plaintiff who no longer trust the reliability of Good Earth's rechargeable lights in general, and no longer have the rechargeable light because they disposed of it due to the defect.

47.     The CLRA provides that "in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1). That is more than any amount Defendant provides under the recall, and more than the value of a replacement light.

48.     The recall was only briefly publicized and in a very limited manner. Therefore, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

## CLASS ALLEGATIONS

49. **_Class Definition_**: Plaintiff brings this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

(a). <u>Nationwide Class</u>: all people in the United States who purchased a subject rechargeable light.

(b). <u>Nationwide Property Damage Subclass</u>: all people in the United States who purchased a subject rechargeable light and suffered property damage as a result within the applicable statute of limitations.

(c). <u>Multi-State Implied Warranty Class</u>: all persons who purchased a subject rechargeable light for personal, family, or household use: (1) in Alaska, Arkansas, California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.

(d). <u>Multi-State Consumer Protection Class</u>: all persons who purchased a subject rechargeable light for personal, family, or household use: (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in the states of Illinois and New York within the applicable statute of limitations.

(e). <u>California Subclass</u>: all people who purchased a subject rechargeable light in California.

50. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information

obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

51.     Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

52.     ***Numerosity.***  Class Members are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its agents, or other means.

53.     ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

(a)     Whether Defendant knew or should have known of the defect at issue in this case, and if so, when it discovered the defect;

(b)     Whether knowledge of the defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

(c)     Whether Defendant failed to disclose and concealed the existence of the defect from potential customers;

(d)     Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here;

54.     With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. &

10

Prof. Code §§ 17200, *et seq*., California's Consumer Legal Remedies Act ("CLRA"), Cal Civ. Code §§ 1750, *et seq*., California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq*.

55. **Typicality.** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiffs and all others similarly situated that the products at issue here can be dangerous, and Defendant's negligence in manufacturing and distributing a product with a defect that causes property damage.

56. **Adequacy**. Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that are antagonistic to those of the Classes. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

57. **Superiority**. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

58. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Class Members and will likely retain the benefits of its wrongdoing.

## COUNT I

### Violations of California's Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

59.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

60.    Plaintiff brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the California Subclass.

61.    California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

62.    Defendant acted with knowledge and intent.

63.    Plaintiff alleges a claim under all three prongs of the UCL.

64.    As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

65.    Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

66.    Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

67.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the other members of the Multi-State Consumer Protection Class and the California Subclass have suffered out-of-pocket losses.

68.    Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

69.     Plaintiff seeks all relief available under the UCL.

## COUNT II

**Violations of California's Consumer Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750, *et seq.***

70.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

71.     Plaintiff brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the California Subclass.

72.     Each Defendant is a "person" as defined by California Civil Code § 1761(c).

73.     Plaintiff and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

74.     For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

75.     Plaintiff provided pre-suit notice of the claims asserted under the CLRA, in compliance with all of the CLRA's requirements.

76.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

77.     Defendant acted with knowledge and intent.

78.     Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

79.     With respect to restitution under the CLRA claim, Plaintiff alleges in the alternative that she and Class Members lack an adequate remedy at law for the reasons already alleged above.

80.     As a result of Defendant's misconduct, Plaintiff and other Class Members have suffered monetary harm.

81.     Plaintiff seeks all relief available under this cause of action.

## COUNT III

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code § 17500,** *et seq.*

82.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

83.     Plaintiff brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the California Subclass.

84.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

85.     Defendant has represented and continues to represent to the public, including Plaintiff and members of the Multi-State Consumer Protection Class and the California Subclass, through its deceptive packaging, that the rechargeable lights are free of the defect alleged herein, are fit for the purpose for which the rechargeable lights would be used, and conform to the promises or affirmations of fact made on the package or label and advertising materials. Because Defendant has disseminated misleading information regarding the rechargeable lights, and Defendant knows, knew, or should have known, through the exercise of reasonable care, that the representations Defendant made are false and misleading, Defendant has violated the FAL.

86.     As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the Multi-State Consumer Protection Class and the California Subclass. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to her and members of the Multi-State Consumer Protection Class and the California Subclass to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion

in the future as discussed herein. Otherwise, Plaintiff and members of the Multi-State Consumer Protection Class and the California Subclass may be irreparably harmed and/or denied an effective and complete remedy.

87.     Plaintiff and members of the Multi-State Consumer Protection Class and the California Subclass have no adequate remedy at law and are therefore entitled to restitution, disgorgement, and/or the imposition of a constructive trust to recover the amount of Defendant's ill-gotten gains, and/or other sums as may be just and equitable.

## COUNT IV

### Violation of Song-Berkly Consumer Warranty Act

### Cal. Civ. Code § 1790, *et seq.*

88.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

89.     Plaintiff brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the California Subclass.

90.     The rechargeable lights are "consumer goods" and California Plaintiff and Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791.

91.     Defendant is a "manufacturer," "distributor," and/or "retail seller" under Cal. Civ. Code § 1791.

92.     The implied warranty of merchantability included with the sale of each rechargeable light means that Defendant warranted that rechargeable light (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the rechargeable light would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

93.     The rechargeable lights would not pass without objection in the trade because they contain the above-described defect, which also makes them unfit for the ordinary purpose for which they would be used.

15

94. The rechargeable lights are not adequately labeled because their labeling fails to disclose the defect and does not advise class members of the existence of the danger prior to experiencing failure firsthand.

95. The rechargeable lights were not sold on an "as is" or "with all faults" basis.

96. Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product. Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

97. Defendant's actions have deprived Plaintiff and class members in the Multi-State Consumer Protection Class and the California Subclass of the benefit of their bargains and have caused the rechargeable lights to be worth less than what California Plaintiff and other class members in the Multi-State Consumer Protection Class and the California Subclass paid.

98. As a direct and proximate result of the breach of implied warranty, class members in the Multi-State Consumer Protection Class and the California Subclass received goods whose condition substantially impairs their value. Class members in the Multi-State Consumer Protection Class and the California Subclass have been damaged by the diminished value of their rechargeable lights.

99. Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and class members in the Multi-State Consumer Protection Class and the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the rechargeable lights or the overpayment or diminution in value of their products. They are also entitled to all incidental and consequential damages resulting from the breach, as well as reasonable attorneys' fees and costs.

100. Plaintiff seeks all relief available under this cause of action.

## COUNT V

**Violation of Illinois Consumer Fraud Act, §§ 815 ILCS 505/1, *et seq.***

101.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

102.    Plaintiff brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class.

103.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), §§ 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

104.    Defendant intended that Plaintiff and each of the other members of the Multi-State Consumer Protection Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

105.    As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Multi-State Consumer Protection Class have sustained damages in an amount to be proven at trial.

106.    In addition, Defendant's conduct showed malice, motive, and reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT VI

**Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.***

107.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

108.    Plaintiff brings this cause of action individually and on behalf all other Class Members.

109.    The rechargeable lights are consumer products as defined in 15 U.S.C. § 2301(1).

110.    Plaintiff and the Class Members are consumers as defined in 15 U.S.C. § 2301(3).

111.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

112.    In connection with the marketing and sale of the rechargeable lights, Defendant

impliedly warranted that the products were fit for use as rechargeable lights. The products were not fit for use as rechargeable lights due to the defect described in the allegations above.

113. By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiff and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*., thereby damaging Plaintiff and Class Members.

114. Plaintiff and Class Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the products if they knew the truth about the defective nature of the products.

## COUNT VII

### Breach of Implied Warranty

115. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

116. Plaintiff brings this cause of action individually and on behalf all other Class Members.

117. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, impliedly warranted that they would pass without objection in trade under the contract description; was fit for the ordinary purpose for which the products would be used; and conformed to the promises or affirmations of fact made on the container or label.

118. Defendant breached its implied warranty because the products could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the defect at issue; and they are unfit for their ordinary purpose. As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

119. Plaintiff and Class Members purchased the products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

120. The products were defective when they left the exclusive control of Defendant.

121. Plaintiff and Class Members did not receive the goods as warranted.

122.     The rechargeable lights were not sold on an "as is" or "with all faults" basis.

123.     Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product. Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

124.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that the products were dangerous; and (b) the products do not have the characteristics, uses, or benefits as promised by Defendant.

125.     Moreover, Plaintiff and members of the Nationwide Property Damage Subclass have been injured and harmed because Defendant's defective products caused property damage. Plaintiff and members of the Nationwide Property Damage Subclass incurred costs of repairs to damaged property, replacement costs for destroyed items, and other economic losses directly resulting from the defective product.

126.     Plaintiff seeks all relief available under this cause of action.

## COUNT VIII

### Unjust Enrichment

127.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

128.     Plaintiff brings this cause of action individually and on behalf all other Class Members.

129.     To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

130.     The unjust enrichment claims are premised on Defendant's pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

131.     Plaintiff and Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiff and Class Members paid to Defendant.

132.     Defendant knew of the benefit conferred on it by Plaintiff and Class Members.

133.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchases of the products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the products were dangerous. This caused injuries to Plaintiff and Class Members because they would not have purchased the products or would have paid less for them if the true facts concerning the products had been known.

134.     Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the products.

135.     Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

136.     Plaintiff and Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the rechargeable lights.

137.     As a direct and proximate result of Defendant's actions, Plaintiff and Class Members have suffered in an amount to be proven at trial.

138.     Putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

139.     Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## COUNT IX

### Fraud by Omission / Intentional Misrepresentation

140.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

141.    Plaintiff brings this cause of action individually and on behalf all other Class Members.

142.    This claim is based on fraudulent omissions concerning the safety of consumers who use the rechargeable lights. As discussed above, Defendant failed to disclose that the rechargeable lights had a dangerous defect.

143.    The false and misleading omissions were made with knowledge of their falsehood. Defendant is a nationwide manufacturer and distributor who knew of reports of the rechargeable lights' defective and dangerous nature. Nonetheless, Defendant continued to sell its worthless lights to unsuspecting consumers.

144.    The false and misleading omissions were made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class Members to purchase the rechargeable lights.

145.    The fraudulent actions of Defendant caused damage to Plaintiff and Class Members, who are entitled to damages and punitive damages.

146.    Moreover, Plaintiff and members of the Nationwide Property Damage Subclass have been injured and harmed because Defendant's defective products caused property damage. Plaintiff and members of the Nationwide Property Damage Subclass incurred costs of repairs to damaged property, replacement costs for destroyed items, and other economic losses directly resulting from the defective product.

147.    Plaintiff seeks all relief available under this cause of action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the classes alleged in this complaint, naming Plaintiff as the representatives of their respective classes, and naming Plaintiff's counsel as Class Counsel to represent the classes;

b.    For an order declaring Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiff and class members on all counts asserted herein;

d.  For an award of injunctive or other equitable relief as is necessary to protect the interests of Plaintiff and the class members, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful acts described above;

e.  For actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

f.  For prejudgment interest on all amounts awarded;

g.  For an order of restitution and all other forms of equitable monetary relief;

h.  For an order awarding Plaintiff and class members their reasonable attorney fees, expenses, and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.


Dated:  December 11, 2024                    Respectfully submitted,

                                   */s/ Joel D. Smith*

**SMITH KRIVOSHEY, PC**
Joel D. Smith*
Aleksandr "Sasha" Litvinov*
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
E-Mail: joel@skclassactions.com
E-Mail: sasha@skclassactions.com
Phone: 617-377-7404

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey*
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
E-Mail: yeremey@skclassactions.com
Phone: 415-839-7000

*Generally Admitted
Attorneys for Plaintiff*

## CLRA Venue Declaration, Civil Code § 1780(c)

I, Joel D. Smith, declare as follows:

2.      I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

3.      I am the attorney for Plaintiff in the above-captioned action.

4.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

5.      The Class Action Complaint has been filed in the proper place for trial of this action.

6.      It is my understanding that Defendant regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on December 11, 2024 in Danielson, CT.

By:  */s/ Joel D. Smith* _____
                    Joel D. Smith